Please, because we know you're not law students, right? All right. I never would have done that again. Good morning. Good morning, Your Honors. My name is Stephen Kahn. I represent David K. Gottlieb as the Chapter 11 trustee of KSL Media Inc. and the plaintiff and the appellant in this matter. I think in reading what the Court wants is clarifications rather than re-arguing. And I think the major clarification that has to be made here is that what there has been is a misdirection as to what the complaint and the evidence is in this case by what the defendants point out and make much of is that the word oversight is used several times. Can I, at least for my purposes, focus what I hope you're going to be able to help me with? As I understand it, you conceded before the trial court that the appellees did not act in bad faith. And you also conceded that if your claim is construed as a care mark claim, that it would fail. Is that right? Correct. Okay. So under the circumstances, what is your best argument that this is not a care mark claim? Simply that we should not lose sight of what care mark is and what the care mark decision holds. Care mark addresses corporate director liability for losses in And arguably, officers, there's one bankruptcy court decision that says that. And that decision states that the care mark decision implies that it may apply to officers, but it does not say that. Do you have any other contrary authority that says that it does not apply to officers? No, but the issue is what directors are charged with and what officers are charged with. What care mark says is that if a board of directors sets up a procedure and sets up systems to assure that employees are not violating the law or regulations, and they do that in good faith, then they are not liable. Do you want us to establish some new law here in the Ninth Circuit? Absolutely not. That says that officers are to be treated just like directors? Because there's no law in the Ninth Circuit about that, right? Well, in Delaware, and that's the controlling law, it says that both officers and directors have the same fiduciary duties. Okay. But in fulfilling those duties, the obligations are likely much different. Because if the board sets up this system, they're absolved of liability. However, if you have an officer, a chief officer of compliance, he's supposed to be doing the things that implicate more activity. But what I want to be clear about is that this is not a care mark claim, and I really want to get back to that. You've listed, I think, let me see how many. You've listed nine bases as allegations in your complaint that you believe are sufficient to distinguish this case from a care mark case. Yes. Is that what you would refer us to? Well, yes, in that, in each charging allegation in which the word oversight is used, and this is something that the defendants ignored and something respectfully the court below didn't focus on, is that along with oversight, there's either an and in front of it or an and after it, excuse me, that states a breach of duty of care claim, which is different from a care mark breach of duty of loyalty claim. And I just want to, before I go through those. Let me be sure I understand what you're saying. Are you claiming that this is a duty of care claim? Absolutely. It's stated as a breach of duty of care claim. That's what it's called. And that's what the factual allegations in the complaint and the numerous facts that are stated or that are evidenced by the evidence that was presented in opposition to the motion for summary judgment show. And this is the qualification. This is the difference between a care mark claim as defined by care mark itself. Care mark says that liability to the corporation for loss by reason of a failure may be said to arise from an unconsidered failure of the board to act in circumstances in which due attention would arguably have prevented a loss. Well, help me with this. As I understand it, a duty of care claim always involves a business decision, correct? It's not an individual thing. It's a business decision. It's a business decision or an action or inaction taken or a course of conduct that is irrational. Okay. Versus a care mark where you can have an individual as opposed to a board acting. You have to be in bad faith when you've said that won't happen here. So you're claiming that these nine allegations constitute breaches of the duty of care, presumably by the board of directors. Is that right? No, absolutely by the defendants as officers of the corporation. And it's specifically stated in paragraphs 15 and 16 of the complaint that these failures of the defendants were as officers and employees of the corporation. But they're not responsible to the corporation for mere negligence, as I understand it. They are responsible for gross negligence. Gross negligence. And what we have shown or what the facts show and what the allegations show, which is not this unconsidered liability that arises, which Caremark deals with and dealt with only on the corporate level because corporations are not involved in day-to-day. But on the day-to-day level, these defendants knew, and especially Cohen and Leibowitz knew for a decade, and they were warned every single, at least every single year by their outside accountant, that they were running at a negative capital balance, that they were robbing Peter to pay Paul. But that's Amazon, and we don't put them out. Well, robbing Peter to pay Paul you sure do. If you're running a business and you're selling widgets for a dollar that cost you $1.20, and then your business plan is to just sell more widgets, you're just going to grow your capital deficit. And I'm just pulling this off the record. But I just want to understand your point because, as I understand it, that's what Amazon did. It wanted to grow and grow and grow and grow. It didn't care so much about the profit. What's different between this and that? Because this is a company that is selling services. They tell a client that comes in, deposit these funds, and we'll buy this media for you for airtime. And then they take those funds and pay other bills, knowing that they're falling further and further behind. Do you want to save any of your time? You don't have to, but. I'll save a minute. I'm getting there because I know that they're going to be going into all sorts of other things. But the charging allegations that, and even one that is without any reference to oversight at all, is in paragraph 29 of the complaint that, with full knowledge of KSL's insolvency and continued negative cash flows from operations since at least 2006, the defendants fail to adequately apprehend KSL's dire financial condition and maintain that they could grow revenue. If they just grew revenues, they would rectify their financial condition. Isn't that more of an oversight issue as opposed to a specific decision? No, I don't believe so. Let me ask you this. Delaware law applies, is that right? Correct, Your Honor. And the Disney case, would you say, is the really best case on this issue of duty of care and gross negligence? I agree with that. Okay. And since I'm getting down to 37 seconds. Yeah, you want to save that? Okay, great. Very well, we'll hear from the affiliates. Good morning. Good morning, Congressman. Hi, my name is Aaron Gunzick, and I'm here to present on behalf of the defendants, Kalman Leibovitz, Harold Cohen, and Russell Meisels. So corporate fiduciaries, whether they're officers, directors, or owners, are not guarantors of corporate performance. Absent extraordinary circumstances, individuals are simply not obligated for corporate debts, right? And as a practical matter in this case, the directors and officers, certainly Mr. Leibovitz and Mr. Cohen, who are also owners, have every incentive to maintain profitability and avoid bankruptcy. Okay, so were they actually directors, officers, and owners? They were, Your Honor. They held all three of those positions? Mr. Leibovitz was the majority owner. Mr. Cohen was more of a minority owner. Okay. Mr. Meisels had no ownership interest. He was an officer only. All right. So under Delaware law, which governs here, the trustee has to do more than just allege that these officers and directors were negligent or even grossly negligent. He's got to show bad faith. And in the oversight of KSL. No, you stipulated there is none of that, right? I'm sorry. I didn't hear you, Your Honor. I'm sorry. Didn't he stipulate before the trial court that there was no bad faith? Absolutely. And that if this was a caremarked situation, he loses. That's correct. And that's our position, of course, is that this is a caremarked situation, there's no bad faith, and the summary judgment was appropriately granted. When you look at these nine, as I counted them, nine allegations, they all deal with oversight, do they not? They absolutely do, Your Honor. They absolutely do. All of the allegations in the complaint, and this is what the district court found, the judge went through the whole complaint, pointed out that there were nine times when they used the term oversight to describe what the defendants had done. And even when they didn't use the word oversight, what it effectively was was lack of oversight, failure to get the right accounting systems involved, failure to look at tax returns, failure to look at profitability information. So it was all about oversight. From your perspective, what is the difference between a breach of the duty of care and a caremark violation? Well, a breach of the duty of care involves a specific business decision, and that's exactly as Your Honor pointed out when Mr. Kahn was arguing. And let me just read what the Disney court said about that. It said that a breach of the duty of care is a failure to consider all material information reasonably available in making business decisions. And so, of course, that presupposes the existence of a business decision having been made. And in distinguishing between the duty of care and the oversight claims, the Caremark Court said that duty of care liability flows from a board decision that results in a loss because that decision was ill-advised or negligent, whereas a lack of oversight comes from considered inaction. Well, you see, if you have a single business decision, that's one thing. What we have here is a course of conduct that, or arguably we have here, is a course of conduct that's driving a business into the ground. And here the duty, and your position is that the duty of oversight does not have, there is no duty to do anything in that circumstance if it's just a duty of oversight. There is a duty of oversight. Yes. And, you know, don't mistake us to say that the duty of oversight has no teeth. Yes, it does. If a board member or an officer fails to oversee the company and does that in bad faith, then there's a liability. But it's not, yes, but here we don't have just a single business decision. We have a course of conduct over years. Absolutely. And doesn't that make a difference? Well, it does. If there's no business decision, then there's no duty of care liability. If there's over, the only possible thing there could be then would be the oversight. Now, I, this is the way they allege the case, right? They allege in their complaint no oversight, no oversight, no oversight. And they said, you know, that this was, you didn't look at tax returns, you didn't, you know, you didn't look at profitability, et cetera. They didn't talk about any specific business decision that was made that led to any specific loss, right? So look at the, a good example of how that breaks down is you look at the Disney case, which is the trustee relies on very heavily. And in Disney, you know, it was about the board's decision and it offers the board's decision to give Michael Ovitz this $130 million, you know, no-fault severance agreement if he was terminated without cause, right? And so the question there was, well, that's a business decision you made. You gave this guy a contract. You promised to pay him a lot of money if he gets terminated for no cause. And now we've got to pay $130 million, right? So some, so that business decision led to a specific loss. And then the question was there, was that business decision, did it, you know, did it violate the duty of due care, right? And now contrast that to the discussion of, in the Stone case, Stone versus Ritter, which came out from the Delaware Supreme Court a few months after the Disney case. And in the Stone case, the court said very clearly that because a showing of bad faith conduct in the sense described in Disney, its earlier decision, and in Caremark is essential to establish director oversight liability, the fiduciary duty violated by that conduct is the duty of loyalty. If you have a violation of the duty of loyalty that's alleged, you've got to have bad faith to make the claim. That's the law. Can I ask you this clarification? When I look at these nine allegations, some of them involve a single individual. Since a business decision must be involved in connection with the duty of care, can a single individual be liable for breaching the duty of care, or does it require more than one officer in this case to breach the duty? Well, I suppose, Your Honor, that if the officer or the person whose decision you're looking at had the authority to individually make that decision, then I suppose the answer to that is that that could have been. But if it were something like a financial, who you hire, for example, as a public accountant. Right. I suppose if the CFO alone had that authority, that would be involved. But if the board of directors could also be involved, then you couldn't have a duty of care claim unless you add the directors as well? Well, yes, either way. If you're talking about a specific business decision and you have damage that flows from that, then, yes, it could be a duty of care claim. I'm trying to understand this because I want to parse out these nine allegations to determine whether they could plausibly even be duty of care claims if there's just a single individual involved.  And so the answer to that, I think, is that if there's an allegation that that individual had the authority to make that business decision, then I suppose one could look at it that way. But that's not what's alleged here. I mean, we have, as the district court found, nine times the complaint talks about oversight. Oversight, oversight, oversight. So in that situation, we clearly have a duty of loyalty oversight claim that's covered by Caremark. I want to turn just for a second, while I have a little bit more time, to the question of whether the Caremark standard applies to officers. And Mr. Kahn talked about that with you a little bit. And the two cases, I think, that are the most important, that are the most helpful to our position in this are the World Health Alternatives case, which is a Delaware bankruptcy court sitting in Delaware, in which the trustee essentially made an argument here. He acknowledged his claim was an oversight claim. The court found that the oversight claim could be made against an officer, but the bad faith standard applies. And then after that, more recently, there was a case called Reeder v. Fairbank, which we've cited in our brief, in which the Delaware Chancery Court applied the bad faith standard to oversight claims made against a corporate CEO as well as directors of the company. So you've got two decisions here that are, you know, relying on Delaware law, saying that officers are covered. You also have the Caremark decision that talks about senior officers being covered by the standard. And that's my reading as well. So if both officers and directors are covered, how do you distinguish between a Caremark oversight claim versus a duty of care when you add the officers into the mix? Well, once again, it's a question of focusing on specific decisions that were or were not made here. I think that's the key here. And, you know, the Delaware cases talk about business decisions being the fundamental impetus for a duty of care claim. The last thing I want to talk about before my little bit of time left here is the causation argument, which we briefed in our papers. Is this the one that the district court did not make a decision on? Yeah, district court specifically declined to look at it because he found that the court found there was no bad faith and, yeah. Okay. So really, you know, the trustee has a burden of proof on causation. I'm moving forward. He's got to show some facts. And all he's done here is say, well, you guys, these guys are liable for all the losses that the company incurred and all of our bankruptcy expenses. And now, in addition to that being, you know, sort of really highlighting once again that this is about oversight and not about business decisions, it doesn't – there's no causal link between these alleged losses and the alleged conduct. And, you know, if you look at the – and I'll just have a couple more seconds here. But if you look at the opinion of the expert witness that the trustee leans very heavily on on this, you'll see that it just – it's this broad statement. Well, gee, if they would have cut expenses, if they would have had more profitability, this company could have survived. But nothing specific. You know, what expenses, you know, how could they have done that? Other questions by my colleague? I don't know. Thank you very much for your time. We request that they be affirmed. Thank you. Okay. Counsel, you have a little rebuttal time. Not much, but some. Yes, I see 37 seconds. I know you're going to make excellent use of it. Mr. Codd, I do have a question for you right off the bat. And that is that there were three things that happened to KSL before the bankruptcy. And I think one was, you know, a person embezzled either $2 million to $4 million. And then there was they lost a good client, Bacardi. And is that the Bacardi? Bacardi, the Rome. Okay. And then there was one other. I mean, that was the problem. Yeah. And they had a lawsuit that they had to deal with. And aren't those really the things that sent the company spiraling into bankruptcy? No, they're not. And that's what our expert witness demonstrated in his declaration, is that if you back out the lawsuit, if you back out the losses occasioned by the embezzlement, which I want to say that since the time of this complaint, it turns out the facts were a bit different and the losses from that were substantially less. If you back all three things out, they were still operating negatively by $6 million. And that was passed on. Other questions by my colleagues? I know we didn't give you extra time, but you gave a wonderful answer to my colleague. So I should sit down and shut up? Well, sit down anyway. But thank you very much to all counsel for your presentation. The case just argued is submitted. Thank you, Your Honor. Thank you.
judges: Schroeder, M. Smith, Drain